IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF D.I.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF D.I., ALLEGED TO BE A DANGEROUS SEX OFFENDER.

D.I., APPELLANT,

V.

MENTAL HEALTH BOARD OF THE FOURTH JUDICIAL DISTRICT, APPELLEE.

Filed December 31, 2018.    No. A-18-237.

Appeal from the District Court for Douglas County: HORACIO J. WHEELOCK, Judge. Affirmed.

D.I., pro se.

Eric W. Wells, Deputy Douglas County Attorney, for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

D.I., pro se, appeals from an order of the Douglas County District Court, affirming the decision of the Mental Health Board of the Fourth Judicial District (Board), which had found that D.I. remained a dangerous sex offender and that secure inpatient treatment continued to be the least restrictive treatment alternative. We affirm.

## II. BACKGROUND

D.I. was convicted of sexual assault of a child in 2004, and was committed to secure inpatient sex offender treatment in December 2006. He was alleged to have sexually assaulted male children between the ages of 8 and 14 with whom he had contact through his positions as

- 1 -

counselor and director of a church-sponsored bible camp. See *In re Interest of D.I.*, 281 Neb. 917, 799 N.W.2d 664 (2011). According to D.I.'s brief on appeal, he was charged with five counts of sexual assault of a child, but was convicted of one count for which he was sentenced to 5 to 5 years' imprisonment. While serving his sentence, the County Attorney's Office for Douglas County filed a petition before the Board alleging D.I. was a dangerous sex offender; the Board ruled that he was. According to D.I., he has challenged his commitment by way of review hearings in November 2009 and March 2016.

In the current proceedings, D.I. was initially represented by counsel. On June 21, 2017, D.I. filed a motion for a review hearing before the Board; he sought an order of discharge or, alternatively, a change in treatment. He also filed a motion in limine that same day seeking to exclude certain evidence relied upon at his initial commitment hearing and the review hearing in November 2009. He claimed certain evidence, including inadmissible hearsay, prejudiced him and denied him of his right to confront and cross-examine witnesses against him.

At the review hearing on July 13, 2017, exhibit 4 (bill of exceptions for review hearing held in November 2009) and exhibit 5 (bill of exceptions for original commitment hearing held in December 2006) were received into evidence for the limited purpose of determining the motion in limine. The Board initially overruled D.I.'s motion in limine, but later sustained D.I.'s renewed motion in limine as to one paragraph located in exhibits 1 and 2 (D.I.'s treatment plans of April and July 2017); otherwise those exhibits were received.

Dr. Jean Laing testified that as a psychologist on staff at the Norfolk Regional Center (NRC), she was responsible for conducting individual and group therapies and psychological evaluations involving setting up an initial treatment plan and directing treatment of patients. She served on a treatment team that reviewed patient progress, updated patient treatment plans, and dealt with "day-to-day" treatment issues. Her curriculum vitae cites experience since 2010 in evaluating adult male sex offenders. She was familiar with D.I. because he was a patient in her facility, having come to the facility in December 2006. Dr. Laing believed D.I. was committed "following his release from prison of where he had served a sentence regarding sexual contact with a child. And . . . it was determined that inpatient treatment was the least restrictive level of care." She recalled the diagnosis from the original commitment order was pedophilic disorder, a nonexclusive type, sexually attracted to males. The record also indicates a separate diagnosis of narcissistic personality disorder.

Dr. Laing had, among other things, reviewed psychological evaluations and worked with D.I. in group therapy in the course of his treatment; as a result, she was aware of the facts of the conviction from 2004. She recounted the facts as follows:

> [D.I.] was accused of and convicted of contact with a prepubescence male's buttocks: Massaging, spanking. And there were actually multiple -- there were two children who were involved with the allegations, only one of the allegations was convicted. They were two brothers. There had been repeated interactions with the children over a period of time, and the last incident was in his apartment when he gave a bare-bottom spanking to the child when the boy wouldn't go home when [D.I.] wanted him to.

In 2015, Dr. Laing was assigned as D.I.'s individual therapist and met monthly with D.I. "until last year" (2016), when "he indicated he did not want to meet any further and didn't see any purpose to that" after he had been "declining a number of sessions."

According to Dr. Laing, NRC's inpatient program consisted of four levels and was "part of a larger program offered" by the Nebraska Department of Health and Human Services (DHHS), with the other part of the program at the Lincoln Regional Center (LRC). She indicated NRC's focus was on people beginning to address thinking, emotions, and behaviors that were involved in the sexual offense, and that LRC's focus was more in depth and ultimately transitional back into the community. To advance from NRC to LRC, "one has to be Level 3 or Level 4." Dr. Laing said D.I. had been at "Level 3" since late 2012. She believed that D.I. progressed slowly in treatment "primarily because he denies having any sexual offenses. He doesn't deny the behavior, he denies that it's sexually motivated. And he -- my understanding from him is that he wants to be released through other legal channels than completing the program." Dr. Laing expressed concern, based on her work with D.I. and as part of his treatment team, about D.I. repeating the behaviors that put him in the situation in the first place, and noted that D.I. had "not seen anything wrong with them."

Explaining the most recent treatment plan from July 2017 (received as exhibit 2 at the hearing), Dr. Laing indicated the treatment plan remained relatively unchanged for a period of time and said D.I. had not obtained "Objective A" (following rules and being cooperative) or "Objective B" (identifying how to prevent future allegations). She found "Objective B" was "a major concern for [D.I.]." Dr. Laing opined to a reasonable degree of psychological certainty that (1) D.I.'s mental illness had not been successfully treated or managed to the extent that he no longer posed a threat to the public or society, (2) D.I. still suffered from a diagnosis of pedophilic disorder, nonexclusive type, sexually attracted to males, and (3) inpatient treatment remained the least restrictive alternative.

D.I. testified it was "clear" that "to get through the program, [he does] have to make an admission of guilt," but later agreed that "Objective B" was to identify behavioral changes he could make to prevent future accusations of sexual assault behavior. And D.I. understood that the question was not asking for an admission of guilt, but rather asking him to identify changes to prevent accusations of sexual assault behavior. What was stopping him from identifying those changes was that, to him, he was "falsely accused and wrongly convicted, meaning that [he] didn't display those behaviors in the first place."

Following the review hearing, the Board entered a one-paragraph order stating:

[T]he Board finds that [D.I.] was committed to sex offender treatment on an order dated December 21, 2006[,] as a dangerous sex offender. The Board finds by clear and convincing evidence the subject continues to meet the definition of a dangerous sex offender as defined under Nebraska law. The current diagnosis of a mental illness is pedophilic disorder, non-exclusive type: sexually attracted to males; given by the current mental health providers. The Board further finds by clear and convincing evidence that the subject's mental illness has not yet been successfully treated or managed to the extent that the subject no longer poses a threat to the public. Although there was evidence that the subject has progressed in treatment, there is additional treatment proposed for the subject to reach a point where the subject may be considered successfully treated or managed. Therefore[,] the Board finds that inpatient treatment is the least restrictive treatment

alternative at this time, which is through the [DHHS]. The order of discharge requested in the motion for review hearing is denied.

D.I. appealed the Board's decision to the district court, which affirmed. D.I. now appeals to this court.

## III. ASSIGNMENTS OF ERROR

D.I. claims, reordered and restated, that the Board erred in (1) denying him the right to challenge the original order of commitment and continuing the original order of commitment, (2) failing to admit the bill of exceptions from the original commitment hearing, (3) permitting an expert's opinion which used inadmissible evidence, and (4) accepting treatment goals that would require him to, in effect, accept guilt and which are outside the scope of the Sex Offender Commitment Act. D.I. also claims the district court erred in affirming the Board's ruling and using factual assertions adopted in an earlier appeal to the Nebraska Supreme Court from a prior motion to review.

## IV. STANDARD OF REVIEW

The district court reviews the determination of a mental health board de novo on the record. *In re Interest of S.J.*, 283 Neb. 507, 810 N.W.2d 720 (2012). In reviewing a district court's judgment, an appellate court will affirm unless it finds, as a matter of law, that clear and convincing evidence does not support the judgment. *Id.*

## V. ANALYSIS

### 1. LEGAL FRAMEWORK OF SEX OFFENDER COMMITMENT ACT

Nebraska's Sex Offender Commitment Act (SOCA) is encompassed in Neb. Rev. Stat. §§ 71-1201 to 71-1226 (Reissue 2009). The purpose of the SOCA is "to provide for the court-ordered treatment of sex offenders who have completed their sentences but continue to pose a threat of harm to others." § 71-1202. Neb. Rev. Stat. § 83-174.01(1) (Reissue 2014) defines a "dangerous sex offender" as

(a) a person who suffers from a mental illness which makes the person likely to engage in repeat acts of sexual violence, who has been convicted of one or more sex offenses, and who is substantially unable to control his or her criminal behavior or (b) a person with a personality disorder which makes the person likely to engage in repeat acts of sexual violence, who has been convicted of two or more sex offenses, and who is substantially unable to control his or her criminal behavior[.]

"Likely to engage in repeat acts of sexual violence means the person's propensity to commit sex offenses resulting in serious harm to others is of such a degree as to pose a menace to the health and safety of the public." § 83-174.01(2).

If dangerous sex offenders do not obtain voluntary treatment, they "shall be subject to involuntary custody and treatment" following mental health board proceedings as provided by the SOCA. § 71-1202. The SOCA states that if a "subject" (person at issue in SOCA proceeding, see § 71-1203(4)) admits to allegations of a petition or the mental health board finds that the subject

is a dangerous sex offender and no other treatment alternatives less restrictive of the subject's liberty than inpatient or outpatient treatment are available or would suffice to prevent the harm described in § 83-174.01(1), then the board shall, within 48 hours, order the subject to receive inpatient or outpatient treatment. See § 71-1209(4). The subject is committed to the custody of DHHS if inpatient treatment is ordered. See *id.*

A person designated by a mental health board to prepare and oversee a subject's individualized treatment plan must submit periodic reports to the mental health board regarding the subject's progress under the plan and any modifications to the plan. See § 71-1216. Section 71-1219(1) states that upon the filing of such a periodic report, the subject may request a review hearing by the mental health board seeking an order of discharge from commitment or a change in treatment. Section 71-1219(2) states:

> The board shall immediately discharge the subject or enter a new treatment order with respect to the subject whenever it is shown by any person or it appears upon the record of the periodic reports filed under section 71-1216 to the satisfaction of the board that (a) the subject's mental illness or personality disorder has been successfully treated or managed to the extent that the subject no longer poses a threat to the public or (b) a less restrictive treatment alternative exists for the subject which does not increase the risk that the subject will commit another sex offense. When discharge or a change in disposition is in issue, due process protections afforded under [the SOCA] shall attach to the subject.

The State bears the burden to show by clear and convincing evidence that the subject remains mentally ill and dangerous, and under the plain language of the statute, the board must determine whether the subject's mental illness or personality disorder has been successfully treated or managed; this necessarily requires the board to review and rely upon the original reason for commitment. See *In re Interest of D.I.*, 281 Neb. 917, 799 N.W.2d 664 (2011). Once the subject of a petition has exercised his or her right to a review hearing, and asserted that there are less restrictive treatment alternatives available, the State is required to present clear and convincing evidence that a less restrictive treatment alternative is inappropriate. *Id.* At that point, the subject may further rebut the State's evidence. *Id.*

## 2. BOARD'S DECISION

### (a) Right to Challenge Original Commitment Order

D.I. claims that he has never been mentally ill and dangerous. He argues that (1) the State has never presented evidence to prove by clear and convincing evidence that he is a dangerous sex offender and (2) the original commitment order was unlawfully made, invalidating any subsequent order. D.I. contends that he is "entitled to challenge his commitment at any time in order to have an incorrect or unlawfully determined order overturned." Brief for appellant at 13. Though he concedes that "the intent of SOCA isn't to re-try a case at each hearing," he maintains that there "is no procedural bar to overturning a previous Board order." Brief for appellant at 19.

However, the SOCA does institute procedural time constraints on the right to appeal certain orders. Under § 71-1214, the "subject of a petition or the county attorney may appeal a treatment order of the mental health board under section 71-1209 to the district court." Further, a "final order of the district court may be appealed to the Court of Appeals in accordance with the procedure in

criminal cases." § 71-1214. The proper procedure to be followed when taking an appeal from a final order of the district court under § 71-1214 is the general appeal procedure set forth in Neb. Rev. Stat. § 25-1912 (Supp. 2017). See *In re Interest of L.T.*, 295 Neb. 105, 886 N.W.2d 525 (2016). To perfect an appeal under § 25-1912, a party must, within 30 days after entry of the order from which the appeal is being taken, file a notice of appeal with the clerk of the district court and deposit the required docket fee unless in forma pauperis status is granted. *In re Interest of L.T., supra*. See, also, § 25-1912.

D.I.'s original commitment order dated December 21, 2006, was a final appealable order which had to be appealed within 30 days. See *In re Interest of L.T., supra*; § 25-1912. The record does not indicate that D.I. appealed from that original commitment order, therefore, he cannot now directly challenge the sufficiency of the evidence on which the Board relied for its initial decision in that order. See *In re Interest of Saville*, 10 Neb. App. 194, 626 N.W.2d 644 (2001) (reaching a similar conclusion in an individual's action challenging commitment as a mentally ill dangerous person under the Nebraska Mental Health Commitment Act (MHCA)). See, also, *In re Interest of D.I., supra* (noting that procedural time constraints to appeal under MHCA mirror that of SOCA; although two separate acts, MHCA and SOCA have similar procedures). It follows that D.I.'s present appeal is limited to challenging the Board's most recent denial of his motion for reconsideration seeking an order of discharge or a change in treatment following the review hearing of June 21, 2017, and the district court's affirmance of that decision. See *In re Interest of D.I., supra* (denial of motion for reconsideration under § 71-1219(1) is a final, appealable order).

(b) Bill of Exceptions of Original Commitment Hearing

D.I. claims the Board erred in not receiving the "transcripts" (referring to exhibit 5, the bill of exceptions from the original commitment hearing held in December 2006). Brief for appellant at 23. As mentioned previously, exhibit 5 was received into evidence for the limited purpose of considering the motion in limine. Thereafter, the Board sustained, on relevancy grounds, the State's objection to D.I.'s reoffer of exhibit 5 for the purpose of the hearing.

D.I. submits that the bill of exceptions from the original hearing "would have revealed that the 2006 Board had declared all of the State's relevant evidence to be hearsay and inadmissible." Brief for appellant at 22. Citing to *In re Interest of D.I.*, 281 Neb. at 925, 799 N.W.2d at 671, D.I. asserts that under § 71-1219(2), the Board's determination of whether the subject's mental illness or personality disorder has been successfully treated or managed, "necessarily requires the board to review and rely upon the original reason for commitment." He acknowledges that the Board took judicial notice of the commitment order of 2006, but he contends that pursuant to the language of *In re Interest of D.I., supra*, cited above, "[i]t is not enough to rely on the original final order, the Board is required to review the reasons *behind* the order." Brief for appellant at 22 (emphasis in original).

*In re Interest of D.I., supra*, involved D.I.'s appeal from the denial of his 2009 motion for reconsideration, wherein he claimed there was no basis to keep him in secure inpatient treatment. Contrary to D.I.'s assertions in the present appeal, the Nebraska Supreme Court did not create a requirement that a mental health board, as part of a review hearing, must review the bill of exceptions from the original commitment hearing. See *In re Interest of D.I., supra*. Rather, the pertinent analysis focused on the "plain language of the statute," which required the board to

determine whether a "subject's mental illness or personality disorder has been 'successfully treated or managed,' which necessarily requires the board to review and rely upon the original reason for commitment." *Id.* at 925, 799 N.W.2d at 671. Therefore, the Supreme Court considered D.I.'s progress within the treatment program, plan for future behavior, view of culpability, and score on a Static-99 test; an expert's medical opinion as to whether D.I. had been successfully treated; and its impression that the Board did not accept that D.I.'s diagnosis had been successfully treated or managed based on a board member's statement at the review hearing of 2009.

Thus, *In re Interest of D.I., supra*, refutes D.I.'s position that the Board erred by declining to review the bill of exceptions from the original commitment hearing for the purpose of his review hearing. The Board's action in judicially noticing the original commitment order was sufficient for purposes of the review hearing. The essence of D.I.'s argument on this alleged error relates to his claim that the original commitment order was unreliable and unsupported by evidence; however, as we have previously stated, D.I. may not now directly challenge that original commitment order. The focus of the review hearing is to determine whether the subject has been successfully treated or managed to the extent that the subject no longer poses a threat to the public or a less restrictive treatment alternative exists which would not increase the risk that the subject would commit another sex offense. See § 71-1219(2). We therefore next consider D.I.'s assigned error regarding the admitted evidence in that context.

(c) Dr. Laing's Opinion

D.I. claims the Board erred when it "overruled [his] Motion in Limine . . . and when it allowed in the State's unsupported expert witness testimony and treatment plans." Brief for appellant at 21. In his motion in limine, D.I. sought to prohibit the State from referring to a letter written by Dr. Michael Luebbert, police reports from the underlying criminal case, statements of a child protective services worker, the "timeframe allegation" contained in the criminal information, and Dr. Skulsky's report. D.I. asserts that Dr. Laing's testimony "should have been declared inadmissible due to lack of foundation," reply brief for appellant at 5, that the treatment plans (exhibits 1 and 2; referenced in Dr. Laing's testimony) were prepared in reliance on inadmissible allegations, and that the psychological evaluations referenced in Dr. Laing's testimony were inadmissible for lack of foundation and probative value. Based on those assertions, D.I. claims inadmissible hearsay was introduced into evidence.

It is within the trial court's discretion to determine whether there is sufficient foundation for an expert witness to give his or her opinion about an issue in question. *In re Interest of A.M.*, 281 Neb. 482, 797 N.W.2d 233 (2011). Mental health boards must apply the rules of evidence. *Id.* See, also, § 71-1226 (rules of evidence applicable in civil proceedings shall apply at hearings held under SOCA). Under Neb. Evid. R. 703, Neb. Rev. Stat. § 27-703 (Reissue 2016), facts or data an expert relies upon may be "perceived by or made known to him at or before the hearing" and "need not be admissible in evidence" if experts in the field reasonably rely on such facts or data in forming opinions or inferences. But because a SOCA hearing may result in a serious deprivation of the defendant's interest in liberty, the State's evidence must be sufficiently reliable to comply with due process. *In re Interest of A.M., supra*.

Our analysis regarding the motion in limine is restricted. Our record does not contain any of the documents referenced in the motion in limine. Regardless, aside from Dr. Skulsky's

psychological evaluation, Dr. Laing did not explicitly mention the noted documents in her testimony. Our record also does not contain the other psychological evaluations that Dr. Laing referenced. Even if we assume without deciding that Dr. Skulsky's psychological evaluation was inappropriately relied upon due to hearsay concerns, Dr. Laing relied upon three other psychological evaluations completed by other doctors and her own experience in treating D.I. to form her opinion. There is nothing in the record to indicate that the other three psychological evaluations were rooted in any inadmissible information.

Dr. Laing testified that her opinion was based on a review of a presentence evaluation by Dr. Mario Scalora, separate psychological evaluations by Dr. Skulsky (prior to D.I.'s commitment), Dr. Van Winkle, and an intern (Jennifer Helkenn) under the supervision of Dr. Sturgis, as well as her own (Dr. Laing's) interactions with D.I. Dr. Laing was familiar with D.I. because he was a patient in her facility and she had been part of his treatment team consistently since 2011. Dr. Laing participated in the development of D.I.'s treatment plan. She worked with D.I. in a psycho-educational group in 2012 or 2013, for several months, and was a facilitator of his sex offender therapy group in 2014, which met 3 times a week for 90 minutes over the course of a year. She met monthly with D.I. for individual therapy from 2015 until sometime in 2016.

We find that Dr. Laing's testimony shows that she had worked extensively with D.I. since 2011, she had reviewed the recent treatment plans from 2017, and she was familiar with the facts of D.I.'s conviction of 2004--not only from her review of the psychological evaluations, but also from her own work with D.I. in group therapy. Dr. Laing had reviewed the evaluations "several times over the course of [D.I.'s] treatment" and said that evaluations would help prepare a treatment plan for D.I.; the members of the Board relied on her use of such sources. Dr. Laing's opinion was supported by facts and data reasonably relied upon by experts in the field and was based on more than mere subjective belief or unsupported speculation. See, § 27-703; *King v. Burlington Northern Santa Fe Ry. Co.*, 277 Neb. 203, 762 N.W.2d 24 (2009) (expert's opinion must be based on good grounds, not mere subjective belief or unsupported speculation; yet courts should not require absolute certainty). Thus, the admission of Dr. Laing's testimony was not in error.

Finally, with regard to the dispute during the review hearing about one paragraph within each of the treatment plans (exhibits 1 and 2), labeled "Progress Update," as containing inadmissible historical allegations against D.I., we note that those paragraphs were excluded from evidence following D.I.'s renewed motion in limine objection. The Board stated the stricken paragraphs from exhibits 1 and 2 would not be used as evidence in making its determination, and the district court's order lacks any indication of reliance on those identical paragraphs. D.I.'s insistence that the remainder of the treatment plans admitted into evidence nevertheless relied on allegations from documents disputed under his motion in limine is an unsupported assertion. And regardless, Dr. Laing's testimony substantially covered the remainder of relevant portions of the treatment plans to support her opinion such that any erroneous admission of the admitted portions of exhibits 1 and 2 would have been harmless error. See *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017) (erroneous admission of evidence is generally harmless error and does not require reversal if evidence is cumulative and other relevant evidence, properly admitted, supports finding by trier of fact).

### (d) Treatment Goals

D.I. claims that the focus of "Objective B" of his treatment plan requires an admission of guilt. However, at the review hearing Dr. Laing testified that "[s]everal years ago, we [NRC] decided to stop going head on into the denial and look [instead] at how [D.I.] would prevent allegations in the future." She clarified that the goal of "Objective B," "isn't asking [D.I.] to acknowledge sexual acts in the past or sexual motivation for the acts in the past, it's asking him what are you going to do to not find yourself accused in the future." D.I. asserts that this change in the goal means he "didn't have to acknowledge wrongdoing, he only had to promise not to do it again," and labels the change as a "difference without distinction." Brief for appellant at 23-24.

Notably, the "Discharge Criteria," in the treatment plans say that to move to the next level of care, D.I. would have to, among other things: accept responsibility for his sexual deviancy and exonerate victims; acknowledge attractions, arousals, and grooming; become aware of significant risk factors to reoffending; develop a written account of his sexual history and describe in detail all of his sexual assaults (at least five if he has more); begin to describe the negative or harmful consequences his assaults have had on victims and others and identify his core beliefs that are important to his offending. Although the requirement of an admission of guilt may be inferred from those stated discharge requirements, the record nevertheless shows that an admission of guilt was not required for D.I. to move on to LRC. Dr. Laing testified the NRC program only requires D.I. to "identify what he would do to avoid allegations in the future," and she even stated that "people [who] have denied sexual offenses have moved [on to] Lincoln [LRC]."

D.I. claims, in the alternative, that "the Board, then, is continuing [his] custody not to protect others from harm, but to protect [him] from other's accusations," and that "[t]o merely seek to prevent an accusation based on misinterpretation or misunderstanding falls outside the scope of SOCA." Brief for appellant at 24. We disagree with D.I.'s interpretation. NRC's decision to change from addressing a subject's denial of past sexual acts or motivations to now requiring only identification of behavioral changes to prevent future accusations of sexual assaults appears to strike a balance between permitting the subject's claim of innocence and the necessity of the subject recognizing the types of behaviors which trigger the SOCA. This is especially so where D.I.'s conviction alone evidences D.I.'s mental condition and casts light on potential future behavior. See *In re Interest of J.R.*, 277 Neb. 362, 762 N.W.2d 305 (2009) (prior convictions are used for evidentiary purposes under the SOCA; specifically, requiring that the subject be convicted of a sex offense provides evidence of the subject's mental condition and helps predict future behavior).

### 3. DISTRICT COURT'S DECISION

D.I. claims the district court erred in affirming the Board's ruling. We will affirm unless we find that, as a matter of law, clear and convincing evidence does not support the district court's judgment. See *In re Interest of S.J.*, 283 Neb. 507, 810 N.W.2d 720 (2012).

### (a) D.I. Remains Dangerous Sex Offender;
#### Not Successfully Treated or Managed

The State must show by clear and convincing evidence that the subject remains mentally ill and dangerous, and the Board must determine whether the subject's mental illness or personality

disorder has been successfully treated or managed taking into consideration the original reason for commitment. See, *In re Interest of D.I.*, 281 Neb. 917, 799 N.W.2d 664 (2011); § 71-1209(4); § 71-1219(2)(a); § 83-174.01.

Dr. Laing testified that D.I.'s conviction involved massaging and spanking of a prepubescence male's buttocks and that there had been repeated interactions with that child and another child; D.I. testified that his conviction was for "fondling" not "spanking." Dr. Laing was concerned D.I. would repeat these behaviors. She referred to behaviors, which she said D.I. described, that were similar behaviors of "[s]panking, massaging children's buttocks, different children. And he continued the behavior in spite of a fairly significant negative consequence"; her reference was to behaviors prior to events that led to D.I.'s conviction (earlier charges in 1987, upon which D.I. was not convicted). The treatment plans report that D.I.'s progress in treatment remains unchanged, and Dr. Laing said it was "not common" for D.I. to remain at "Level 3" for as long as he has and remain in the NRC program for about 10½ years. The treatment plan shows, and Dr. Laing testified, that D.I. had reported that he would continue to use spanking "as a form of discipline for children." As the doctor stated, for the last several years, D.I. has resisted addressing what he would do to not be accused of a sexual offense in the future.

While the treatment plan indicates D.I. denies that his behavior was for sexual gratification, the treatment plan also reports (and Dr. Laing testified) that D.I. recognizes how others interpreted his behavior underlying his conviction as inappropriate. At the review hearing, D.I. stated, "what I'm supposed to admit to is not just that I had some sexual intent on spanking, which is what I have admitted to doing, but that I also engaged in this other behavior that they feel that I've also engaged in" (referring to other "allegations" or instances of behavior unrelated to the behavior underlying his conviction).

Dr. Laing testified to a reasonable degree of psychological certainty that D.I.'s mental illness had not been successfully treated or managed to the extent that he no longer posed a threat to the public or society due to him not addressing behaviors that he would need to change and that D.I. still suffered from a diagnosis of pedophilic disorder, nonexclusive type, sexually attracted to males. She said that on a risk assessment instrument, the Static 99, D.I. scored in the moderate high range of risk. Dr. Laing thought that D.I. believed he did not need the help of professionals in sex offender treatment. Dr. Laing disagreed, saying, "I think that this pattern of behavior, which resulted in a conviction for a sexual offense and involved repeated behavior over time, is not something that he has at all adequately looked at. And I think that this is the treatment . . . appropriate for looking at it."

Given the foregoing, the district court did not err in determining that the State proved by clear and convincing evidence that D.I. remains a dangerous sex offender and that his condition had not been successfully treated or managed to the extent required.

(b) Inpatient Treatment Remains Least Restrictive Alternative

The State is also required to present clear and convincing evidence that a less restrictive treatment alternative is not appropriate. See, *In re Interest of D.I., supra*; § 71-1219(2)(b).

D.I.'s most recent treatment plan states:

His risks to reoffend are related to his history of sexual deviancy with prepubescent, unrelated boys, a limited history of stable romantic relationships, and his unwillingness to

- 10 -

acknowledge the inappropriateness of his behaviors with his victims. He has the perception that he does not need the help of professionals or peers, and he does not have a history of sexual deviancy, but only a conviction of one single act. For these reasons, the treatment team believes that inpatient treatment is the least restrictive form of care.

Dr. Laing testified to a reasonable degree of psychological certainty that inpatient treatment remained the least restrictive alternative given the "repeated behavior of physical contact with prepubescence boys' buttocks," the denial of anything problematic with the behavior, and the refusal to address how he could change the behavior in the future. We find no error in the district court's determination that there was clear and convincing evidence before the Board to support that inpatient treatment remained the least restrictive alternative.

D.I. argues, however, that the district court erred by "shifting the burden of proof to [him]," saying it was evidenced by the district court's order. Reply brief for appellant at 7. D.I. is referring to the court's statement: "The [district court] finds that the [State] presented clear and convincing evidence that secure inpatient treatment remains the least restrictive treatment alternative and that *D.I. presented no evidence beyond denials of culpability and mere assertions to rebut the* [*State's*] *expert* [*Dr. Laing*]." (Emphasis supplied.) The district court found that the State met its burden of proof that a less restrictive treatment alternative was not appropriate; at that point, D.I. was permitted to rebut the State's evidence, but did not sufficiently do so. There was no improper shifting of the burden of proof by the district court, and we find no clear error in the district court's conclusion that D.I. did not present sufficient rebuttal evidence to the State's evidence which established there was no less restrictive treatment alternative. See *In re Interest of D.I.*, 281 Neb. at 926, 799 N.W.2d at 672 (once subject has exercised his right to review hearing and asserted that there are less restrictive treatment alternatives available, "the State is required to present clear and convincing evidence that a less restrictive treatment alternative is inappropriate. At that point, the subject may further rebut the State's evidence").

D.I. also argues that the district court "placed more weight on the word of the State than on [him]." Reply brief for appellant at 7. The district court reviews the determination of a mental health board de novo on the record, and this court will affirm the district court's judgment unless clear and convincing evidence does not support the judgment. See *In re Interest of S.J., supra*. As already discussed, the evidence clearly and convincingly supports the district court's judgment.

D.I. also asserts that the district court's judicial notice of *In re Interest of D.I.*, *supra*, in which the Nebraska Supreme Court cited an unpublished memorandum opinion from this court, "reintroduce[d] inadmissible evidence into the proceedings." Brief for appellant at 30. There is no merit to this argument. Once again, D.I. attempts to detract from the primary issue of whether he has been successfully treated by suggesting that any reference to past determinations, whether in reports or even in appellate opinions, somehow adversely impacts his ability to have a fair review hearing. However, contrary to D.I.'s claims, there was clear and convincing evidence presented at the Board hearing that he had not been successfully treated; all past reports and court opinions have minimal persuasive value when considering the more significant aspects of Dr. Laing's testimony as to D.I.'s ongoing treatment progress or lack thereof. In particular, Dr. Laing raised legitimate concerns regarding D.I.'s lack of progress in treatment and his attitude about recommended services. It was Dr. Laing's opinion that D.I. had progressed slowly in treatment

because he denied having any sexual offenses even though he did not deny the behavior; rather, he denied the behavior was sexually motivated. Dr. Laing expressed concern about D.I. repeating the behaviors that put him in the situation in the first place, particularly since D.I. had "not seen anything wrong with them." This evidence supports the Board's decision and the district court's affirmance of that decision. There is nothing in the record to support that the Board or the district court relied on any inappropriate or inadmissible evidence in reaching a decision, and to the extent they did, such consideration would have been harmless in light of the clear and convincing evidence otherwise properly admitted.

## VI. CONCLUSION

We affirm the judgment of the district court which affirmed the Board's decision denying D.I.'s request for an order of discharge or change in treatment.

AFFIRMED.